# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Guidant Sales Corporation and Cardiac
Pacemakers, Inc.,

Civil No. 05-2890 (PAM/JSM)

Plaintiffs,

v.

**MEMORANDUM AND ORDER**

Brian D. George and ELA Medical, Inc.,

Defendants.

_____

This matter is before the Court on Defendants' Motions to Dismiss.  For the reasons
that follow, the Court denies the Motions.

## BACKGROUND

Plaintiff Cardiac Pacemakers, Inc. develops and manufactures cardiac rhythm
management devices.  Plaintiff Guidant Sales Company, a wholly-owned subsidiary of
Cardiac Pacemakers, sells the devices.  Defendant ELA Medical, Inc. also develops,
manufactures, and sells cardiac rhythm management devices.  Defendant Brian D. George,
a former Guidant sales representative, resigned from Guidant in November 2005 and
thereafter entered into a sales representative agreement to sell cardiac rhythm management
devices for ELA Medical.

George had worked for Guidant for more than a decade.  When he commenced his
employment, he was an at-will employee.  On June 15, 2004, Guidant and George executed
two agreements: an Employment Agreement and an Agreement Regarding Non-Disclosure

of Confidential Information, Non-Competition, and Ownership of Intellectual Property

("Non-Compete Agreement").  Both agreements became effective July 1, 2004.

The Employment Agreement provides, in relevant part:

Employee has been employed by Guidant as a sales representative for its cardiac rhythm management ("CRM") product line.  His employment has been at-will.

Employee wishes to remain employed by Guidant as a sales representative and to obtain guaranteed compensation and the protections of a term of employment.  Guidant wishes to continue to employ Employee and to obtain the benefit of a term of employment and a newly executed Agreement Regarding Non-Disclosure of Confidential Information, Non-Competition and Ownership of Intellectual Property.

. . .

Termination Of Employment Under This Agreement.  Unless a different date is set by written agreement of the parties, Employee's employment under this Agreement will terminate automatically and immediately, upon the occurrence of the earliest of the dates or events listed below:

(a)     December 31, 2008.
(b)     Immediately upon notice from Guidant that it is terminating Employee's employment for Cause [the Employment Agreement then defines the circumstances that constitute "Cause"].
(c)     The death of Employee.
(d)     A determination by Guidant that Employee is not able to perform the essential functions of his position . . . .
(e)     Employee's assignment to a position within Guidant or Guidant Corporation, by mutual agreement between the parties, other than that of sales representative for the CRM product line in the territory in which Employee is assigned.

Subsequent Employment.  If Employee's employment by Guidant continues after December 31, 2008, and the parties have not entered into a new written agreement or agreed in writing to extend this Agreement, Employee will, effective January 1, 2009, be employed at-will at a compensation rate to be set

2

by Guidant.  During any period of at-will employment after December 31, 2008, either Employee or Guidant may terminate the employment relationship at any time for any lawful reason without advance notice.

. . .

Remedies for Breach.  Employee hereby acknowledges and agrees that any breach by him of the provisions of this Agreement may cause Guidant irreparable injury for which there is no adequate remedy at law.  Therefore, Guidant shall be entitled, in addition to other remedies available, to injunctive or other equitable relief to require specific performance or to prevent a breach of the provisions of this Agreement. . . .

(Am. Compl. Ex. A ¶¶ A-B, C9-C10, C13.)

The Non-Disclosure Agreement, which was incorporated into the Employment Agreement, provides in relevant part:

Non-Competition.  During the term of employment and for a period of three hundred sixty-five (365) days following the termination of employment with Guidant for any reason, Employee shall not sell, solicit the sale of, support the sale of, support or supervise the sale or implantation or other use of, or otherwise have any involvement whatsoever with the sale, manufacturing, research and development, marketing or other business aspect of any Competitive Product with respect to any Guidant Account.  It is expressly understood that Employee may be employed by a competitor of Guidant during the three hundred sixty-five (365) days following termination so long as such employment does not involve the prohibited actions specified above.

. . .

Non-Employment Agreement.  This Agreement is not an employment contract and does not give Employee any right to continue employment.  Employee acknowledges that the ability of Guidant to terminate Employee's employment at will at any time is not affected by this Agreement.

(ELA Medical Answer Ex. A ¶¶ 3, 10.)

The Amended Complaint contains five causes of action.  In Count One, Plaintiffs allege that George breached the Employment Agreement.  Count Two seeks a declaration that the Employment Agreement is valid and enforceable.  Count Three alleges that George breached his common law duty of loyalty by soliciting other Guidant employees to join him at ELA Medical.  In Counts Four and Five, Plaintiffs allege that ELA Medical wrongfully interfered with the Employment Agreement and engaged in unfair competition.

**DISCUSSION**

Defendants seek dismissal of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.  A court should generally resolve any questions pertaining to jurisdiction before reaching issues on the merits.  Crawford v. F. Hoffman-La Roche Ltd., 267 F.3d 760, 764 (8th Cir. 2001).  Because the question of subject matter jurisdiction will depend on resolution of the merits in this case, however, the Court will first examine the Amended Complaint under Rule 12(b)(6).

**A.     Failure to State a Claim**

For the purposes of a motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations as true and grants every reasonable inference arising from the Amended Complaint favorably to Plaintiffs.  See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir.

1990) (citations omitted).  The Court will dismiss a claim only if it appears beyond doubt that Plaintiffs can prove no facts that would entitle them to relief.  <u>Id.</u> (citation omitted).[1]

1.    <u>Breach of Contract</u>

Plaintiffs allege that George breached the Employment Agreement by resigning from Guidant before December 31, 2008.  (Am. Compl. ¶¶ 24, 29-32.)  Defendants advance several arguments in favor of dismissing the breach of contract claim.  First, they emphasize that the Non-Compete Agreement specifically acknowledges that George's employment relationship was at-will.  They submit that the Court should construe both the Employment Agreement and Non-Compete Agreement against Guidant, the drafter of the agreements.  In addition, they ask the Court to find that the agreements did not alter George's at-will employment status so that George was free to resign from Guidant at any time.

The Employment Agreement and Non-Compete Agreement contain seemingly inconsistent provisions.  The Non-Compete Agreement expressly refrains from modifying the at-will employment relationship.  However, the Employment Agreement contains several provisions indicating that the parties intended to alter the at-will relationship.  For example, the Employment Agreement acknowledges that George's employment had been at-will and states that the parties wished to obtain the benefits of a term of employment.  In addition, it

---

[1] Both George and ELA Medical filed their Motions to Dismiss after filing Answers to the Amended Complaint.  Technically, a Rule 12(b)(6) motion cannot be filed after an answer has been submitted.  <u>Westcott</u>, 901 F.2d at 1488.  However, the Eighth Circuit has instructed courts to treat such a motion as one for judgment on the pleadings under Rule 12(c).  <u>See</u> <u>id.</u> The distinction is "purely formal" because courts review 12(c) motions under the standard that governs 12(b)(6) motions.  <u>Id.</u> (citations omitted).

states that George would remain employed by Guidant until December 31, 2008 or until a specific event occurred. Finally, the Employment Agreement expressly states that George would revert to an at-will employee after December 31, 2008.

At this time, the Court will not resolve the apparent conflict between the agreements. The Amended Complaint alleges that the Employment Agreement altered the at-will employment relationship and that George violated the Employment Agreement when he resigned before December 31, 2008. Construing all reasonable inferences from the Amended Complaint in favor of Plaintiffs, the Court finds that Count One sets forth a viable breach of contract claim.

Next, Defendants argue that the Employment Agreement is unenforceable under the Thirteenth Amendment. They rely on Shaw v. Fisher, 102 S.E. 325 (S.C. 1920), which recognized that the Thirteenth Amendment proscribes an employer from coercing an employee to perform labor required by the parties' contract. Id. at 326-27. However, Plaintiffs are not seeking specific performance—they are seeking damages for alleged breach of the Employment Agreement. Accordingly, the Thirteenth Amendment's prohibition on involuntary servitude is not implicated. Id. at 327 (an employer may sustain an action for damages if an employee breaches an employment contract).[2]

---

[2] The Court notes that the Employment Agreement states that Guidant "shall be entitled, in addition to any other remedies available, to injunctive or other equitable relief to require specific performance or to prevent a breach of the provisions of this Agreement." (Am. Compl. Ex. A ¶ C13.) Arguably, that provision would violate the Thirteenth Amendment if Plaintiffs were asking the Court to order George to work for Guidant until the expiration of the Employment Agreement. However, Plaintiffs are not seeking such relief. Moreover, the

Finally, Defendants argue that the Employment Agreement violates public policy because it effectively precludes George from employment in any industry until 2009. "Under Minnesota law restrictive covenants are strictly construed but will be enforced to the extent they are reasonable and protect a legitimate interest of the employer." Medtronic, Inc. v. Gibbons, 684 F.2, 565, 568 (8th Cir. 1982). Clearly, restricting George from working until 2009 is unreasonable and unenforceable. However, Plaintiffs are not seeking to enjoin George. Rather, they are seeking damages for his alleged breach. A party may enforce a fixed-term employment contract, see Becker v. Blair, 361 N.W.2d 434, 436 (Minn. Ct. App. 1985), and may recover damages from a party who breaches the contract. See Kvidera v. Rotation Eng'g & Mfg. Co., 705 N.W.2d 416, 420-21 (Minn. Ct. App. 2005). Because Plaintiffs are seeking damages but not injunctive relief, Defendants' argument on this point fails. The breach of contract claim survives the Motions to Dismiss.

2.    Declaratory Relief

Count Two requests a declaration that the Employment Agreement is valid and enforceable. The Declaratory Judgment Act confers jurisdiction to "declare the rights of interested parties 'in a case of actual controversy.'" Diagnostic Unit Inmate Council v. Films, 88 F.3d 651, 653 (8th Cir. 1996) (quoting 28 U.S.C. § 2201)). An actual controversy arises when there is "a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Gopher

---

Employment Agreement contains a severability clause, which could render the injunctive relief provision invalid while preserving the other provisions of the Employment Agreement.

Oil Co. v. Bunker, 84 F.3d 1047, 1050 (8th Cir. 1996) (citations omitted).  Disputes over the meaning or enforceability of a contract present actual controversies that may be settled through a declaratory judgment.  See, e.g., E.W. Blanch Co., Inc. v. Enan, 124 F.3d 965, 968 (8th Cir. 1997).  Because the parties dispute the enforceability of the Employment Agreement, Count Two survives the Motions to Dismiss.

   3.  Breach of Duty of Loyalty

   Plaintiffs allege that George, while employed by Guidant, solicited other Guidant employees to join him at ELA Medical.  They further allege that they were damaged by the solicitation.  (Am. Compl. ¶¶ 36-40.)  George argues that the claim fails because Plaintiffs do not allege that any employee resigned from Guidant to join ELA Medical.

   In Minnesota, an employee owes his employer a duty of loyalty, which prohibits him from competing with his employer while still employed.  Rehab. Specialists, Inc. v. Koering, 404 N.W.2d 301, 304 (Minn. Ct. App. 1987) (citing Sanitary Farm Dairies, Inc. v. Wolf, 112 N.W.2d 42 (Minn. 1961)).  One way an employee may unfairly compete is by soliciting his co-workers to terminate their employment and join him at a direct competitor.  Benfield, Inc. v. Moline, No. 04-3513, 2006 WL 452903, at *9 (D. Minn. Feb. 22, 2006) (Davis, J.).

   The parties dispute whether Plaintiffs must show that George's solicitation attempts were successful.  Compare Benfield, 2006 WL 452903, at *4-*5 (defining "solicitation" merely as "the act or an instance of requesting or seeking to obtain something" and implicitly requiring only an attempt to persuade another employee to resign), with Signergy Sign

Group, Inc. v. Adam, Nos. A04-70 & A04-147, 2004 WL 2711312, at *1 (Minn. Ct. App. Nov. 30, 2004) (implying that a breach of loyalty claim requires successful luring of another employee). The Court need not decide that issue now. Whether an employee breached a duty of loyalty must be determined by considering all relevant circumstances. Rehab. Specialists, Inc., 404 N.W.2d at 305 (citations omitted). There "is no precise line between acts by an employee which constitute prohibited 'solicitation' and acts which constitute permissible 'preparation.' Because of the competing interests, the actionable wrong is a matter of degree." Id. (citations omitted). The Amended Complaint alleges that Plaintiffs suffered damages as a result of George's solicitation. Taking these allegations as true, the Court finds that Plaintiffs sufficiently plead a breach of the duty of loyalty claim.

4.     Tortious Interference and Unfair Competition

Counts Three and Four of the Amended Complaint allege that ELA Medical induced George to breach the Employment Agreement. To establish tortious interference with a contractual relationship, Plaintiffs must show: (1) the existence of a contract, (2) knowledge of the contract by the alleged wrongdoer, (3) intentional procurement of the contract's breach, (4) an absence of justification, and (5) damages cause by the breach. Kallok v. Medtronic, Inc., 573 N.W.2d 356, 362 (Minn. 2002) (citing Kjesbo v. Ricks, 517 N.W.2d 585, 588 (Minn. 1994)). "Unfair competition is not a tort with specific elements; it describes a general category of torts which courts recognize for the protection of commercial interests." Rehab. Specialists, Inc., 404 N.W.2d at 305. A person can be guilty of unfair competition

by tortiously interfering with a contractual relationship.  <u>See</u> <u>United Wild Rice, Inc. v.</u> <u>Nelson</u>, 313 N.W.2d 628, 632 (Minn. 1981).

ELA Medical argues that dismissal of the tortious interference and unfair competition claims is warranted for several reasons.  First, it submits that it did not interfere with a fixed-term employment contract; rather, it merely made George, an at-will employee, a better employment offer.  However, the Amended Complaint alleges that the Employment Agreement altered the at-will employment relationship between George and Guidant. Because the Court must construe these allegations in favor of Plaintiffs, the Court rejects ELA Medical's argument on this point.

Second, ELA Medical argues that the Amended Complaint does not allege that it induced George to breach the Employment Agreement.  To the contrary, the Amended Complaint claims that ELA Medical knew of the Employment Agreement, proceeded to negotiate and enter into a sales agreement with George in "flagrant violation" of the Employment Agreement, and thereby "improperly and intentionally induced George's material breach of the [Employment Agreement], without justification." (Am. Compl. ¶ 27.)

Finally, ELA Medical submits that its action was justified.  It maintains that its only fault was in negotiating and entering into an agreement with George.  "Whether interference is justified is ordinarily a factual determination of what is reasonable conduct under the circumstances." <u>Kallok</u>, 573 N.W.2d at 362 (citing <u>Kjesbo</u>, 517 N.W.2d at 588).  ELA

Medical bears the burden of showing justification.  Id.  As such, it is inappropriate for the Court to dismiss the tortious interference and unfair competition claims on this point.

     5.    Dismissal of Cardiac Pacemakers

ELA Medical argues that Cardiac Pacemakers lacks standing to sue because it is not a party to the Employment Agreement.  Plaintiffs respond that Cardiac Pacemakers, as manufacturer and developer of the cardiac rhythm management devices sold by Guidant, is a third-party beneficiary of the Employment Agreement.

A third-party beneficiary may have the right to sue on a contract, despite not having been a party to the contract.  The right arises when the third party is the intended beneficiary of the contract, as opposed to an incidental beneficiary.  Minnesota law recognizes third-party beneficiary rights when the third party meets either the "intent to benefit" test or the "duty owed" test.  Dayton Dev. Co. v. Gilman Fin. Servs., Inc., 419 F.3d 852, 855-56 (8th Cir. 2005) (citing Cretex Cos., Inc. v. Constr. Leaders, Inc., 342 N.W.2d 135, 138 (Minn. 1984)).  "The intent to benefit test generally requires that the contract 'express some intent by the parties to benefit the third party through contractual performance.'" Id. at 856 (citing Norwest Fin. Leasing, Inc. v. Morgan Whitney, Inc., 787 F. Supp. 895, 898 (D. Minn. 1992) (Doty, J.) (quoting Chard Realty, Inc. v. City of Shakopee, 392 N.W.2d 716, 720-21 (Minn. Ct. App. 1986))).  Usually, "when there is no reference to the third party in the contract, there is no intent to benefit the third party."  Id. (quoting 614 Co. v. Minneapolis Cmty. Dev. Agency, 547 N.W.2d 400, 410 (Minn. Ct. App. 1996)).  The absence of the third party's

name, however, does not preclude a finding of intent to benefit "if the circumstances show otherwise." Julian Johnson Constr. Corp. v. Parranto, 352 N.W.2d 808, 811 (Minn. Ct. App. 1984). The Court must consider all circumstances surrounding the execution of the contract. Id. (citing Buchman Plumbing Co. v. Regents of the Univ. of Minn., 215 N.W.2d 479, 483 (Minn. 1974)).

The Employment Agreement does not refer to Cardiac Pacemakers. However, the Non-Compete Agreement, which was incorporated into the Employment Agreement, specifically defines Guidant as including its parent company. This provides some indication that the parties intended to confer the benefits of the contract on Cardiac Pacemakers.[3] Moreover, the Amended Complaint alleges that Guidant was established "as the single entity through which [Cardiac Pacemakers] sells and distributes its products in the United States" and that all Cardiac Pacemakers' sales people are Guidant employees. (Am. Compl. ¶ 2.) Giving Plaintiffs the benefit of all reasonable inferences, the Court finds sufficient allegations that Cardiac Pacemakers is a third-party beneficiary to the Employment Agreement.

---

[3] The Court notes that Plaintiffs are seeking enforcement of the Employment Agreement—and not the Non-Compete Agreement. Nonetheless, the integration of the agreements signals that the parties intended to use the definition in both agreements.

**B.      Subject Matter Jurisdiction**

Defendants also move to dismiss for lack of subject matter jurisdiction, arguing that Plaintiffs cannot satisfy the amount-in-controversy requirement under 28 U.S.C. § 1332(a).[4]

Federal courts are courts of limited jurisdiction, possessing only those powers authorized by the Constitution and the statutes enacted by Congress. <u>Willy v. Coastal Corp.</u>, 503 U.S. 131, 136 (1992). Congress has given federal courts jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332. In addition, "where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement," the Court may exercise supplemental jurisdiction over the claims of other plaintiffs in the same case or controversy, "even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction." <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 125 S. Ct. 2611, 2615 (2005).

When determining the amount in controversy, "a complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." <u>Capitol Indem. Corp. v. 1405 Assocs., Inc.</u>, 340 F.3d 547, 549 (8th Cir. 2003) (citation omitted). Because Defendants challenge the allegations of the amount

---

[4] There is no dispute that Plaintiffs meet the diversity-of-citizenship requirement under 28 U.S.C. § 1332(a)(1).

in controversy, Plaintiffs must establish by a preponderance of the evidence that at least one named plaintiff satisfies the amount-in-controversy requirement.  Rasmussen v. State Farm Mut. Auto. Ins. Co., 410 F.3d 1029, 1031 (8th Cir. 2005) (citation omitted).

The Amended Complaint avers that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  (Am. Comp. ¶ 5.)  In addition, the prayer for relief asks the Court to award "compensatory damages in excess of $75,000."  (Id. ¶ 12.) Nonetheless, Defendants argue that the Amended Complaint fails to sufficiently plead the requisite amount in controversy because it does not state the amount in controversy in each specific count.   They reason that Plaintiffs may not meet the amount-in-controversy requirement if the Court dismisses some of the claims.  Because the Court does not dismiss any of the claims, Defendants' argument is moot.  Furthermore, Plaintiffs have established that the amount of controversy exceeds $75,000, as they seek to recover the guaranteed commission payments remitted to George under the Employment Agreement.  Thus, diversity jurisdiction exists.

**CONCLUSION**

The Amended Complaint sufficiently states claims upon which relief may be granted. Moreover, Plaintiffs have established that at least $75,000 is in controversy in this diversity action.  Accordingly, **IT IS HEREBY ORDERED** that:

1.      Defendant Brian D. George's Motion to Dismiss the Amended Complaint (Docket Nos. 12 and 23) is **DENIED**; and

14

    2.       Defendant ELA Medical's Motion to Dismiss the Amended Complaint (Docket No. 15) is **DENIED**.

Dated: November 14, 2006

                                      s/ Paul A. Magnuson
                                      Paul A. Magnuson
                                      United States District Court Judge